UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN WINCKLER, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, SPENCER NEUMANN, and COLLISTER JOHNSON,<br><br>    Defendants. | Case No.  1:19-cv-02095-LAP<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MIN NING GOH AND ASG JAPAN LIMITED FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1
STATEMENT OF FACTS ............................................................................................................ 2
ARGUMENT .................................................................................................................................. 4
    I.     MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS ........................... 4
          A.    Movants are Willing to Serve as Class Representatives ............................. 5
          B.    Movants Have the "Largest Financial Interest" in the Action .................... 5
          C.    Movants Otherwise Satisfy the Requirements of Rule 23 .......................... 6
    II.    LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED 9
CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, 17-CV-10085,
 2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018)..............................................................7

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
 141 F.R.D. 229 (2d Cir. 1992) ...................................................................................................7

*Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*,
 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018)........................................................6

*Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*,
 2018 U.S. Dist. LEXIS 62575 (S.D.N.Y. Apr. 12, 2018)...........................................................8

*Foley v. Transocean Ltd.*,
 272 F.R.D. 126 (S.D.N.Y. 2011) ...............................................................................................8

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001).......................................................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ...........................................................6

*In re Drexel Burnham Lambert Grp., Inc.*,
 960 F.2d 285 (2d Cir. 1992).......................................................................................................7

*In re Molson Coors Brewing Co. Sec. Litig.*,
 233 F.R.D. 147 (D. Del. 2005) ..................................................................................................9

*In re Olsten Corp. Sec. Litig.*,
 3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...........................................................................................6

*In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS),
 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) ............................................................7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................................................7

*Janbay v. Canadian Solar, Inc.*,
 272 F.R.D. 113 (S.D.N.Y. 2010) ...............................................................................................7

*Kaplan v. Gelfond*,
 240 F.R.D. 88 (S.D.N.Y. 2007) .................................................................................................7

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ..................................................................................9

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
   1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997).........................................5, 6

*Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN),
   2017 U.S. Dist. LEXIS 187238 (S.D.N.Y. Nov. 13, 2017) ........................................6

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ................................................................................6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008).........................................................................9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23............................................................................................... *passim*

Min Ning Goh and ASG Japan Limited (collectively, "Goh and ASG Japan" or "Movants") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Movants as Lead Plaintiffs; and (2) approving proposed Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The Complaint in the above-captioned action alleges that Activision Blizzard, Inc. ("Activision Blizzard" or the "Company") and the above-named defendants (collectively, the "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. Activision Blizzard investors, including Movants, incurred significant losses following the disclosure of the alleged fraud, which caused Activision Blizzard's stock price to fall sharply, damaging Movants and other Activision Blizzard investors.

Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with their purchases of Activision Blizzard securities between August 2, 2018 and January 10, 2019, both dates inclusive (the "Class Period"), Movants incurred losses of approximately $396,549. Accordingly, Movants believe that they have the largest financial interest in the relief sought in this action.

Beyond their considerable financial interest, Movants also meet the applicable requirements of Rule 23 because their claims are typical of absent class members and because they will fairly and adequately represent the interests of the Class.

1

In order to fulfill their obligations as Lead Plaintiffs and vigorously prosecute this action on behalf of the Class, Movants have selected Pomerantz as Lead Counsel for the Class. Pomerantz is a nationally recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors, and recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest securities class action settlement in a decade.

Accordingly, Movants respectfully request that the Court enter an order appointing Movants as Lead Plaintiffs and approving their selection of Pomerantz as Lead Counsel.

## STATEMENT OF FACTS

As alleged in the Complaint, Activision Blizzard develops and distributes content and services on video game consoles, personal computers (PC), and mobile devices. The Company is headquartered in Santa Monica, California, and its common stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "ATVI".

On April 29, 2010, the Company announced its entry, through its wholly owned subsidiary Activision Publishing, Inc. ("Activision Publishing"), into an agreement with Bungie, the developer of blockbuster game franchises including *Halo*, *Myth* and *Marathon*. The agreement with Bungie gave Activision Blizzard exclusive rights to publish and distribute video games developed by Bungie for the next ten years.

The partnership between Activision Blizzard and Bungie yielded the commercially successful *Destiny* franchise, a series of science fiction-themed video games. In September 2014, Activision Blizzard released *Destiny*, the first installment in the franchise, developed by Bungie. Activision Blizzard announced that the Company sold $500 million of *Destiny* into retail stores and first parties worldwide on the first day of its release, making the game the largest video game franchise launch in history at that time. Over the following two years, Bungie developed and

2

Activision Blizzard released four expansions for *Destiny*. In September 2017, Activision Blizzard released a full sequel, *Destiny 2*. On September 15, 2017, Activision Blizzard announced that *Destiny 2* had "surpassed the original's records for engagement and digital sales in launch week. To date, Bungie has developed and Activision Blizzard has released three expansions for *Destiny 2*.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the termination of Activision Blizzard and Bungie's partnership, giving Bungie full publishing rights and responsibilities for the *Destiny* franchise, was imminent; (ii) the termination of the two companies' relationship would foreseeably have a significant negative impact on Activision Blizzard's revenues; and (iii) as a result, Activision Blizzard's public statements were materially false and misleading at all relevant times.

On January 10, 2019, Activision Blizzard and Bungie announced the end of their business relationship. In a post on its website entitled "Our Destiny", Bungie stated, in relevant part, that "The planned transition process is already underway in its early stages, with Bungie and Activision both committed to making sure the handoff is as seamless as possible." That same day, in an SEC filing, Activision Blizzard stated that Bungie "would assume full publishing rights and responsibilities for the Destiny franchise. Going forward, Bungie will own and develop the franchise."

Following these announcements, the Company's stock price fell $4.81 per share, or 9.37%, to close at $46.54 on January 11, 2019. 9.

3

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Movants and other Class members have suffered significant losses and damages.

## ARGUMENT

**I.     MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS**

Movants should be appointed Lead Plaintiffs because, to their knowledge, Movants have the largest financial interest in the Action and otherwise satisfy the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

 (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movants satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Lead Plaintiffs for the Class.

### A.     Movants are Willing to Serve as Class Representatives

On January 18, 2019, counsel for plaintiff in a related securities fraud class action filed against Activision Blizzard in the United States District Court for the Central District of California caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities fraud class action had been filed against Defendants and which advised investors in Activision Blizzard securities that they had until March 19, 2019 to file a motion to be appointed as lead plaintiff (the "PSLRA Notice"). *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A. Movants have filed the instant motion pursuant to the PSLRA Notice and have attached Certifications attesting that they are willing to serve as representatives for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. B. Accordingly, Movants satisfy the first requirement to serve as Lead Plaintiffs of the Class.

### B.     Movants Have the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of their knowledge, Movants have the largest financial interest of any Activision Blizzard investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS

11866, at *17 (N.D. Ill. Aug. 6, 1997).  In accord with other courts nationwide,[1] these *Lax* factors have been adopted and routinely applied by courts in this judicial district.  *See*, *e.g.*, *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at *3 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Movants: (1) purchased 17,460 shares of Activision Blizzard stock; (2) expended $1,211,940 on purchases of Activision Blizzard stock; (3) retained 12,206 of their shares of Activision Blizzard stock; and (4) incurred losses of $396,549 in connection with their transactions in Activision Blizzard stock.  *See* Lieberman Decl., Ex. C.  To the extent that Movants possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C.     Movants Otherwise Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[1] *See e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007).

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a *prima facie* showing that they meet [the requirements of] Rule 23". *Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 U.S. Dist. LEXIS 57591, at *8 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.")  Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 U.S. Dist. LEXIS 57591 at *8.  Here, the Complaint in the above-captioned action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all class members, including Movant.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291) (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Movants' claims are typical of those of the Class. Movants allege, as do all Class members, that Defendants violated federal securities laws making what they knew or should have known were false or misleading statements of material facts and/or omitting to disclose material facts concerning Activision Blizzard. Movants, as did all members of the Class, purchased Activision Blizzard common stock during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove Activision Blizzard's stock price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*, 2018 U.S. Dist. LEXIS 62575, at *6 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Movants have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submit their choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Movants' interests and the interests of the Class. Movants have submitted signed Certifications declaring their commitment to protecting the interests of the Class (*see* Lieberman Decl., Ex. B), and the

significant losses incurred by Movants demonstrate that they have a sufficient interest in the outcome of this litigation to ensure vigorous adequacy.

## II.     LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  *See also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)). *See also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Movants have selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.  *See* Lieberman Decl., Ex. D.  Pomerantz is a premiere firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, and Paris, France.  For more than 75 years, Pomerantz has represented defrauded investors.  As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States.  Courts in this judicial district, the Second Circuit, and throughout the country have recognized Pomerantz's qualifications to serve as class counsel, and Pomerantz has recently been appointed lead counsel in actions including *Schiro v. CEMEX, S.A.B. de C.V.*, 1:18-cv-2352 (S.D.N.Y.); *Brady v. Top Ships Inc.*,

9

2:17-cv-4987 (E.D.N.Y.); *Smith v. Antares Pharma, Inc.*, 3:17-cv-8945 (D.N.J.) and *Kessman v. Myriad Genetics, Inc.*, No. 18-cv-336 (D. Utah).

As a result of Pomerantz's extensive experience in litigation involving issues similar to those raised in the instant action, Movants' chosen counsel have the skill, knowledge, expertise, and experience that will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movants' selection of Pomerantz as Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court issue an Order: (1) appointing Movants as Lead Plaintiffs; and (2) approving proposed Lead Plaintiffs' selection of as Lead Counsel for the Class.

Dated: March 19, 2019

Respectfully submitted,
POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: jlindenfeld@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Movants and
Proposed Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall (*pro hac vice* application forthcoming)
1880 Century Park East
Los Angeles, CA 90067
(424) 303-1964
Email: brian@schallfirm.com

*Additional Counsel for Movants*